## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF
## VIRGINIA RICHMOND DIVISION

| | |
|---|---|
| EDDIE BANKS, RYAN BROWN, LANAISHA FOREMAN, CHANISE NYCOLE JACKSON, TAYLOR JOHNS, TYUS JONES, VICTORIA LOUGH, ALEXY MARATELLOS, ANGELINA MARSELLA, and JULIAN STEBBINS-SHARPLESS | COMPLAINT AND JURY DEMAND |
| Plaintiffs, | Case No.   3:21cv65 |
| v. | |
| CITY OF FREDERICKSBURG, COUNTY OF STAFFORD, and TIMOTHY J. BAROODY, BRIAN LAYTON, CRYSTAL HILL, DAVID P. DECATUR, and JOHN DOE OFFICERS 1-50, in their individual capacities, | |
| Defendants. | |

## INTRODUCTION

1.      Plaintiffs Eddie Banks, Ryan Brown, Lanaisha Foreman, Chanise Nycole Jackson, Taylor Johns, Tyus Jones, Victoria Lough, Alexy Maratellos, Angelina Marsella, and Julian Stebbins-Sharpless bring this action under 42 U.S.C. § 1983 for violations of the First and Fourth Amendments to the United States Constitution, against the City of Fredericksburg and the County of Stafford (collectively the "Municipal Defendants"), and individual Defendants Fredericksburg City Manager Timothy J. Baroody, Fredericksburg Police Department ("FPD") Chief Brian Layton, FPD Lieutenant Crystal Hill, Stafford County Sheriff's Office ("SCSO") Sheriff David P. Decatur, and John Doe Officers ("the Officers") 1-50 of the FPD, SCSO, Fredericksburg Sheriff's Office, Virginia State Police, and Spotsylvania Sheriff's Office.

1

2.      On May 31 and June 1, 2020, Plaintiffs in Fredericksburg, Virginia, protested the murders of George Floyd, Breonna Taylor, and other Black Americans who were violently killed by the police. Plaintiffs peacefully marched, kneeled, and chanted "Black Lives Matter," to express their grief and outrage, and to demand an end to the systemic racism and police brutality that have taken the lives of so many Black people.

3.      To prevent Plaintiffs from voicing their criticisms of the police, the Municipal Defendants ordered law enforcement to break up the peaceful protests. Under the express directives and policies of the Municipal Defendants, John Doe Officers arrived at the scene of the protests on May 31 and June 1 in armored vehicles and riot gear, declared the protests unlawful assemblies, and immediately and indiscriminately deployed a barrage of tear gas canisters, pepper spray, and rubber bullets at Plaintiffs. Although Plaintiffs were peaceful and tried to comply with orders, John Doe Officers trapped Plaintiffs within enclosed areas without a safe exit and repeatedly attacked Plaintiffs with chemical weapons and rubber bullets at close range, in accordance with the Municipal Defendants' plan of attack.

4.      Additionally, Defendants City of Fredericksburg and Fredericksburg City Manager Baroody declared a curfew from May 31 to June 6, 2020, in a further effort to prohibit Plaintiffs from participating in peaceful protests against police violence.

5.      Defendants' unlawful conduct had the purpose and effect of retaliating against and ultimately chilling Plaintiffs' constitutionally protected speech, which Defendants viewed as critical of the police and the government.

6.      Plaintiffs seek redress for the physical and emotional injuries they sustained as a result of Defendants' unlawful conduct.

2

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §
1331 and 28 U.S.C. § 1343(a)(3).

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because the events
or omissions giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

9.      Plaintiff Eddie Banks is an adult resident of Spotsylvania County, Virginia.

10.     Plaintiff Ryan Brown is an adult resident of Fredericksburg, Virginia.

11.     Plaintiff Lanaisha Foreman is an adult resident of Fredericksburg, Virginia.

12.     Plaintiff Chanise Nycole Jackson is an adult resident of Spotsylvania County,
Virginia.

13.     Plaintiff Taylor Johns is an adult resident of Richmond, Virginia. At the time of
the events giving rise to the claims here, she resided in Fredericksburg, Virginia.

14.     Plaintiff Tyus Jones is an adult resident of Fredericksburg, Virginia.

15.     Plaintiff Victoria Lough is an adult resident of Fredericksburg, Virginia.

16.     Plaintiff Alexy Maratellos is an adult resident of Kill Devil Hills, North Carolina.
At the time of the events giving rise to the claims here, she resided in Fredericksburg, Virginia.

17.     Plaintiff Angelina Marsella is an adult resident of Rosemount, Minnesota. At the
time of the events giving rise to the claims here, she resided in Quantico, Virginia.

18.     Plaintiff Julian Stebbins-Sharpless is an adult resident of Fredericksburg,
Virginia.

19.     Defendant City of Fredericksburg is an independent city in Virginia. It operates
and governs the Fredericksburg Police Department ("FPD") and Fredericksburg Sheriff's Office.

The City of Fredericksburg, through its policies and the decisions of its policymakers, violated Plaintiffs' First and Fourth Amendment rights. It also acted through its agents and employees.

20.     Defendant County of Stafford is a county in Virginia. It operates and governs the Stafford County Sheriff's Office ("SCSO"). The County of Stafford, through its policies and the decisions of its policymakers, violated Plaintiffs' First and Fourth Amendment rights. It also acted through its agents and employees.

21.     Defendant Timothy J. Baroody is the City Manager of the City of Fredericksburg. He is sued in his individual capacity. As City Manager, Defendant Baroody has direct control and final policymaking authority over the FPD. At all times relevant to this Complaint, he was acting under color of state law. He unlawfully declared a curfew to restrict and retaliate against Plaintiffs' protected speech and, on information and belief, ordered, directed, authorized, supervised, and otherwise affirmatively caused excessive use of force against Plaintiffs.

22.     Defendant Brian Layton is the Chief of the FPD. He is sued in his individual capacity. He is the chief law enforcement officer for Fredericksburg and, along with the City Manager, has the power and decision-making authority to establish rules and policies governing the conduct and duties of FPD officers. Along with the City Manager, Defendant Layton has policymaking authority over the FPD. At all times relevant to this Complaint, he was acting under color of state law. On information and belief, he ordered, directed, authorized, supervised, and otherwise affirmatively caused excessive use of force against Plaintiffs.

23.     Defendant Crystal Hill is a Lieutenant of the FPD. She is sued in her individual capacity. At all times relevant to this Complaint, she was acting under color of state law. On information and belief, she ordered, directed, authorized, supervised, and otherwise affirmatively caused excessive use of force against Plaintiffs.

4

24.    Defendant David P. Decatur is the Sheriff of the SCSO. He is sued in his individual capacity. He is the chief law enforcement officer for Stafford County and has policymaking authority over the SCSO, including the power and authority to make and establish rules and policies governing the conduct and duties of SCSO officers. At all times relevant to this Complaint, he was acting under color of state law. On information and belief, he ordered, directed, authorized, supervised, and otherwise affirmatively caused excessive use of force against Plaintiffs.

25.    Defendants John Doe Officers 1-50 are members and employees of the FPD, SCSO, Fredericksburg Sheriff's Office, Virginia State Police, or Spotsylvania Sheriff's Office, at all times relevant to this Complaint. They are sued in their individual capacities. At all times relevant to this Complaint, they were acting under color of state law and carrying out the policies and directives of the Municipal Defendants by using excessive force against Plaintiffs, supervising, instructing, and dispatching other Officers to use excessive force against Plaintiffs, and otherwise affirmatively causing Plaintiffs' constitutional injury.

**FACTS**

26.    On May 25, 2020, George Floyd was killed by a police officer, who kneeled on Mr. Floyd's neck as he repeatedly cried out, "I can't breathe." His murder was the latest tragedy in the long history of police brutality against Black Americans. In the days following Mr. Floyd's death, Black Lives Matter protests against racist police violence spread across the world – including in Fredericksburg, Virginia.

**I.    Defendants' Violent Suppression of Plaintiffs' Peaceful Protests on May 31, 2020**

27.    On May 31, 2020, protesters of all ages and backgrounds gathered in Fredericksburg, Virginia, to support the Black Lives Matter movement. Protesters included

families with their babies in strollers, children, business owners, local politicians, and faculty and students from the University of Mary Washington, who peacefully marched, holding signs and chanting phrases like "Black Lives Matter" and "I can't breathe."

28.     Plaintiffs Banks, Brown, Foreman, Jones, Lough, Maratellos, Marsella, and Stebbins-Sharpless participated in the protests on May 31. They walked peacefully, unarmed and not engaging in any conduct that threatened the safety of any person or damaged any property.

29.     As Plaintiffs engaged in peaceful protests, Defendant City of Fredericksburg formulated a plan of action to stop them. Defendant Baroody, Fredericksburg City Manager, and Defendant Layton, the FPD Chief of Police, collectively made all decisions concerning the City of Fredericksburg's actions against protesters on May 31. They exercised their policymaking authority over the FPD and dispatched other agencies to carry out their directives.

30.     Upon information and belief, Defendants Baroody and Layton made the decision to curtail protest activities through use of force, instructing John Doe Officers, including Defendant FPD Lieutenant Hill, to declare an unlawful assembly and to use chemical agents and weapons to disperse the protesters and end the demonstrations.

31.     Despite the City of Fredericksburg subsequently admitting that the protests were peaceful, Defendants Baroody and Layton decided to deploy the FPD's specialized tactical unit to confront Plaintiffs and other protesters. The tactical unit was equipped with specialized uniforms, PR-24 batons, shields, and gas masks to protect them from the chemical agents that the City of Fredericksburg ordered them to use against the protesters.

32.     Upon information and belief, Defendants Baroody and Layton provided specific instructions to the tactical unit, Defendant Hill, and John Doe Officers, directing them to end the protests by surrounding protesters and using force, all the way down to the specific script of

language to use while dispensing chemical agents. The City of Fredericksburg subsequently acknowledged that the force deployed against protesters was pursuant to its authority and the Mayor of Fredericksburg, Mary Katherine Greenlaw, apologized for the City of Fredericksburg's use of force against peaceful demonstrators.

33.    Upon information and belief, the City of Fredericksburg failed to train and supervise law enforcement Officers regarding the proper use of force and appropriate use of chemical agents and weapons, despite authorizing and planning their use.

### a. Defendants' Unlawful Conduct Against Plaintiffs Banks, Foreman, Jones, Lough, and Marsella

34.    As the protesters, including Plaintiffs Banks, Foreman, Jones, Lough, and Marsella, peacefully walked toward Cowan Boulevard, John Doe Officers of the FPD and other agencies confronted them. The Officers intimidated the protesters to chill their speech. They operated their police vehicles in an aggressive manner, speeding up dangerously close to and almost hitting the protesters who were on foot. The Officers also taunted the protesters, demonstrating their animus toward the protesters and their message.

35.    Plaintiffs Banks, Foreman, Jones, Lough, and Marsella, and other protesters, walked up a hill on Cowan Boulevard and arrived near Hugh Mercer Elementary School, where nearly a dozen police vehicles, along with John Doe Officers from the FPD, its tactical unit, and other agencies, were lined up and waiting. These Officers had been deployed by, and were acting pursuant to the express directives of, the City of Fredericksburg. Because these Officers were acting in accordance with specific directives from the City of Fredericksburg, they were coordinated in their approach and actions. The Officers were positioned at both the top and bottom of the hill, caging in Plaintiffs Banks, Foreman, Jones, Lough, and Marsella, and other

protesters. The Officers' formation trapped Plaintiffs and they were unable to move either forward or backward on the hill.

36.    Through a loudspeaker, in a mostly inaudible announcement, a voice declared that the protest was an unlawful assembly, reading from a script at the direction of the City of Fredericksburg. The John Doe Officers at the scene immediately threw a red smoke canister in front of the protesters. The Officers immediately deployed the smoke canister pursuant to the City of Fredericksburg's instructions and authorization to use tactical unit weapons—including smoke, gas, and batons—to break up the protest.

37.    The protesters, including Plaintiffs Banks, Foreman, Jones, Lough, and Marsella, started backing away and dispersing in compliance with the Officers' orders. Nonetheless, the John Doe Officers at the scene immediately began to deploy multiple tear gas canisters indiscriminately, which they fired with launchers or threw by hand, at the protesters and Plaintiffs. The Officers did not give any warning or any opportunity for Plaintiffs and other protesters to disperse safely. The Officers' excessive use of tear gas caused clouds of gas to block exits to side streets to which protesters could have dispersed, further restricting Plaintiffs' movement on the hill.

38.    Tear gas can inflict pain and incapacitate individuals who encounter it. It causes a burning sensation, tightening of the chest, difficulty breathing, and skin irritation. When tear gas is used excessively, in enclosed spaces, or when people cannot escape, it can cause chemical burns in the throat and lungs, respiratory failure, or even blindness, and people can be trampled in an ensuing stampede. When tear gas canisters are launched, the direct blunt force impact from the canisters can cause head trauma, bruising, and broken bones.

39.    Additionally, John Doe Officers in gas masks sprinted toward protesters through the tear gas, and deployed rubber bullets and pepper spray at them. Defendants City of Fredericksburg, Baroody, and Layton also authorized this use of force.

40.    At close range, rubber bullets can reach speeds comparable to live ammunition and can break bones, damage internal organs, and even kill. At longer ranges, their irregular shapes cause them to ricochet. They have unpredictable trajectories and can hit bystanders.

41.    Pepper spray causes eye closure through swelling of the eyelids, immediate respiratory inflammation, including uncontrollable coughing, retching, and shortness of breath, and immediate burning sensations to the mucous membranes, skin, and the nose and mouth.

42.    The protesters, including Plaintiffs Banks, Foreman, Jones, Lough, and Marsella, became trapped on the hill, because of the formation of the John Doe Officers and the clouds of tear gas blocking a safe path for exit, and they screamed and panicked. They coughed violently, choked, and collapsed due to the John Doe Officers' attacks.

43.    When the attacks began, Plaintiff Banks had been walking peacefully, unarmed, and not engaging in any conduct that threatened the safety of any person or damaged any property. Despite being trapped on the hill, she tried to comply with the Officers' demands to leave the area. Nonetheless, the John Doe Officers at the scene launched tear gas canisters and chemical agents at her, in accordance with specific policy directives from the City of Fredericksburg. She came in contact with the chemical agents and immediately suffered their painful effects. She was blinded for several minutes and her entire face and skin burned. As she tried to make her way to safety, she continued to hear the firing of weapons all around her. She feared for her physical safety.

9

44.    When the attacks began, Plaintiff Foreman had been walking peacefully, unarmed, and not engaging in any conduct that threatened the safety of any person or damaged any property. Despite being trapped on the hill, she tried to comply with the Officers' demands to leave the area. Nonetheless, the John Doe Officers at the scene launched tear gas canisters and chemical agents at her, in accordance with specific policy directives from the City of Fredericksburg. She came in contact with the chemical agents and immediately suffered their painful effects, including intense burning in her eyes that made it difficult to open them and to see. She feared for her physical safety.

45.    When the attacks began, Plaintiff Jones had been walking peacefully, unarmed, and not engaging in any conduct that threatened the safety of any person or damaged any property. Despite being trapped on the hill, he tried to comply with Officers' demands to leave the area. Nonetheless, the John Doe Officers at the scene launched tear gas canisters and chemical agents at him, in accordance with specific policy directives from the City of Fredericksburg. He heard the popping sounds of launching tear gas canisters and came in contact with the chemical agents. He immediately suffered their painful effects, including intense burning of his eyes and skin. He feared for his physical safety.

46.    When the attacks began, Plaintiff Lough had been walking peacefully, unarmed, and not engaging in any conduct that threatened the safety of any person or damaged any property. Despite being trapped on the hill, she tried to comply with the Officers' demands to leave the area. Nonetheless, the John Doe Officers at the scene launched tear gas canisters and chemical agents at her, in accordance with specific policy directives from the City of Fredericksburg.  She heard multiple popping sounds of launching tear gas canisters and came in

contact with the chemical agents. She immediately suffered their painful effects. She felt her eyes and throat burn and had difficulty breathing. She feared for her physical safety.

47.     When the attacks began, Plaintiff Marsella had been walking peacefully, unarmed, and not engaging in any conduct that threatened the safety of any person or damaged any property. Despite being trapped on the hill, she tried to comply with the Officers' demands to leave the area. Nonetheless, the John Doe Officers at the scene launched tear gas canisters and chemical agents at her, in accordance with specific policy directives from the City of Fredericksburg. She came in contact with the tear gas and chemical agents and immediately suffered their painful effects. Her eyes burned and her breathing came out in sobs. To leave the area, she risked her safety and ran through a cloud of tear gas blocking an exit to a side street and reached the parking lot of an apartment complex next to Cowan Boulevard. She complied with the Officers' orders by leaving the area, but the John Doe Officers shot tear gas canisters into the parking lot. She inhaled more tear gas, which aggravated the already painful effects. She feared for her physical safety.

48.     At the direction of the City of Fredericksburg, through Baroody and Layton, the John Doe Officers coordinated the attacks against Plaintiffs and used excessive force, chemical weapons, and dangerous tactics, including enclosing Plaintiffs on a hill, in an effort to restrict and retaliate against Plaintiffs' peaceful speech, which Defendants viewed as critical of the police and the government. Defendants acted with malice, knowing that their actions would place Plaintiffs in grave physical danger, without regard for Plaintiffs' constitutional rights and overall health and safety.

49.     Once the John Doe Officers' attacks subsided, Plaintiffs Banks, Foreman, Jones, Lough, and Marsella were finally able to leave the area. Due to the attacks, Plaintiffs' peaceful

11

protest activities were cut short, and they were left in pain and distress. Plaintiffs Banks, Foreman, Jones, and Lough walked back to downtown Fredericksburg, where some of their cars were parked, so they could go home. Plaintiff Marsella headed in a different direction to return home.

### b. Defendants' Unlawful Conduct Against Plaintiffs Banks, Foreman, Jones, Lough, Maratellos, and Stebbins-Sharpless

50.     In downtown Fredericksburg, protesters, including Plaintiff Maratellos, peacefully marched near the Fredericksburg General District Court ("Courthouse"). They walked an approximately five-block loop around the Courthouse, chanting "Black Lives Matter" and "I can't breathe." They were simply walking and chanting, and not engaging in any activity that threatened the safety of any person or caused damage to any property.

51.     While the protesters marched peacefully around the Courthouse, police vehicles sped past them, and John Doe Officers, including tactical team members in riot gear, lined up and circled the sidewalk in front of and surrounding the Courthouse.

52.     Around that time, Plaintiffs Banks, Foreman, Jones, and Lough had returned to the Courthouse area, near to where some of their cars were parked. Plaintiff Stebbins-Sharpless also arrived at the Courthouse area.

53.     Some protesters kneeled on the empty Princess Anne Street in front of the Courthouse. They raised their hands and chanted "hands up, don't shoot" and "I can't breathe."

54.     When cars started to drive up Princess Anne Street, the protesters who had been kneeling in the street started returning to the sidewalks and continued chanting. The cars honked in support of the protesters. A little boy waved at the protesters from a passing car, and the crowd cheered.

55.     Almost all protesters returned to the sidewalks. However, the John Doe Officers at the scene, acting in accordance with specific directives from the City of Fredericksburg, pulled down their gas masks in unison and prepared their shields, and an armored police vehicle pulled up at the intersection of Princess Anne Street and Charlotte Street. Through a loudspeaker, Defendant Lieutenant Hill of the FPD declared that the protest was an unlawful assembly, in accordance with the directive from Defendants Baroody and Layton, who made the decision. This announcement was not amplified enough and was mostly inaudible to the protesters and bystanders, including Plaintiffs Banks, Foreman, Jones, Lough, Maratellos, and Stebbins-Sharpless.

56.     In the midst of Defendant Hill's announcement, the John Doe Officers started attacking people with chemical weapons and rubber bullets, without any warning and without giving any opportunity for safe dispersal. This immediate use of force was directed and authorized by the City of Fredericksburg, through Defendants Baroody and Layton, as part of their decision to put a stop to Plaintiffs' protest activities, using the FPD tactical unit and other John Doe Officers. In accordance with the City of Fredericksburg's directives, the John Doe Officers fired an excessive amount of tear gas canisters at the people in the area, including Plaintiffs Maratellos and Lough, aiming directly at their bodies. The John Doe Officers also used pepper spray on protesters, and grabbed protesters off the street, especially those who attempted to record the brutal scene. The John Doe Officers remained coordinated in their attacks on Plaintiffs and others in the area.

57.     When the attacks began, Plaintiff Maratellos had been protesting peacefully, unarmed, and not engaging in any conduct that threatened the safety of any person or damaged any property. Nonetheless, the John Doe Officers launched tear gas canisters and chemical

agents at her, in accordance with specific policy directives from the City of Fredericksburg. A tear gas canister struck her knee, causing her to lose control of all her muscles, fall forward face-first to the ground, and urinate on herself. She felt disoriented. Blood flowed from her knee. In addition to sustaining injuries from the impact of the canister and falling on the ground, Plaintiff Maratellos immediately suffered the painful effects of tear gas and chemical agents, including difficulty breathing and burning in her eyes. She feared for her physical safety.

58.    When the attacks began, Plaintiff Lough was standing on the sidewalk. She had been peaceful, unarmed, and not engaging in any conduct that threatened the safety of any person or damaged any property. Nonetheless, the John Doe Officers shot tear gas canisters and chemical weapons at her, in accordance with specific policy directives from the City of Fredericksburg. A tear gas canister struck her leg, causing significant pain and injury. She also immediately suffered the painful effects of tear gas and chemical agents, including burning and difficulty breathing. She feared for her physical safety.

59.    Several Plaintiffs at the scene observed a John Doe Officer using pepper spray on a young woman, who was dressed in a tank top, shorts, and flip flops, and who was standing alone in front of the Courthouse. Although she was peaceful, unarmed, and not engaging in any conduct that threatened the safety of any person or damaged any property, the John Doe Officer sprayed this young woman directly in her eyes from no more than a foot away. When she stumbled and collapsed to the ground, several John Doe Officers dragged her away.

60.    Due to the John Doe Officers' indiscriminate attacks using tear gas, pepper spray, and rubber bullets, protesters and bystanders were blinded and injured, including Plaintiffs. They choked and coughed violently, fell to the ground, and ran into each other as they tried to get

14

away. Plaintiff Jones saw a child suffer what appeared to be an asthma attack because of the chemicals.

61.     As people at the scene tried to comply with Defendant Hill's orders and leave the area, the John Doe Officers chased them down and continued to use force and violence. The John Doe Officers advanced down the streets of downtown Fredericksburg in formation and attacked people they encountered, with their arsenal of weapons. They chased people into narrow, closed-off alleyways, and fired tear gas into those enclosed spaces.

62.     As Plaintiff Jones was peacefully leaving the area, he heard the screams of people who were trapped in an alley that was blocked off by John Doe Officers in riot gear. They showered tear gas and chemical agents into the alley. Plaintiff Jones opened a fence blocking the other end of the alley to free this group of individuals, which appeared to include minors.

63.     As Plaintiff Banks was leaving the area in compliance with Defendant Hill's orders, John Doe Officers started chasing her. She was peaceful and simply trying to get to her car to go home. She was unarmed, not posing any danger to any person or property, and moving away from the Officers. Nonetheless, the Officers continued to chase her into a narrow alley and fired rounds of tear gas and chemical agents into the alley. At Caroline Street, the Officers stopped her and forced her to her knees. From less than ten feet away, they pointed two weapons directly at her that looked like shotguns. After questioning, she was finally let go.

64.     At the direction of the City of Fredericksburg, through Baroody and Layton, Defendant Hill and the John Doe Officers coordinated the attacks against Plaintiffs and used excessive force, chemical weapons, and dangerous tactics, in an effort to restrict and retaliate against Plaintiffs' peaceful speech, which Defendants viewed as critical of the police and the government. Defendants acted with malice, knowing that their actions would place Plaintiffs in

grave physical danger, without regard for Plaintiffs' constitutional rights and overall health and safety.

### c.  Defendants' Unlawful Conduct Against Plaintiff Brown

65.     After learning about the police violence that happened earlier in the day, Plaintiff Brown went to downtown Fredericksburg with his video camera to document the events.

66.     Plaintiff Brown joined a group of protesters who were on the sidewalks at the intersection of Princess Anne Street and William Street. The protesters, including a woman with a three-year-old boy, held signs and chanted, "Say his name: George Floyd." The protesters, including Plaintiff Brown, were peaceful, unarmed, and not engaging in any activity that threatened the safety of any person or that damaged any property.

67.     A police vehicle drove into the intersection and stopped. Before driving away, a male voice, through a loudspeaker, declared that the protest was an unlawful assembly and ordered the crowd to disperse, reading from a script at the direction of the City of Fredericksburg.

68.     Plaintiff Brown, along with other protesters, left the area in compliance with the Officers' orders. He walked on the sidewalks and arrived near the intersection of Caroline Street and Hanover Street, where about two dozen John Doe FPD Officers were lined up in riot gear and holding shields.

69.     Plaintiff Brown and other protesters were just peacefully walking, unarmed, and posing no danger to any person or property. Nonetheless, without giving an opportunity for safe dispersal, the John Doe Officers suddenly engaged in a series of attacks against Plaintiff Brown and other protesters, in accordance with specific policy directives from the City of Fredericksburg. The Officers shot tear gas canisters, and when the group, including Plaintiff

Brown, backed away toward George Street, the Officers responded by firing even more tear gas canisters. As the Officers launched tear gas canisters at him, Plaintiff Brown came in contact with the tear gas and suffered its painful effects, including intense burning of his eyes and skin and difficulty breathing.

70.    As Plaintiff Brown continued to move away from the John Doe Officers, peaceful, unarmed, and not engaging in any activity that would have harmed any person or property, the Officers banged their shields and marched toward him and other protesters. As the Officers advanced, they aimed lasers at the protesters' bodies and shot more tear gas canisters at them, including Plaintiff Brown. The Officers shot an excessive amount of tear gas canisters at Plaintiff Brown and about seven protesters who were in front of him. Plaintiff Brown came in contact with the tear gas and again suffered its painful effects.

71.    At the direction of the City of Fredericksburg, through Baroody and Layton, the John Doe Officers coordinated the attacks against Plaintiff Brown and used excessive force, chemical weapons, and dangerous tactics, in an effort to restrict and retaliate against Plaintiff Brown's peaceful speech, which Defendants viewed as critical of the police and the government. Defendants acted with malice, knowing that their actions would place Plaintiff Brown in grave physical danger, with disregard to his constitutional rights and overall health and safety.

### d.  Defendants Declare First Curfew to Chill Plaintiffs' Speech

72.    On May 31, 2020, in response to the protests, the City of Fredericksburg, through Defendant Baroody, abruptly declared a curfew beginning at 11:30 p.m. on May 31st to 6:30 a.m. the following morning.

73.    The curfew prohibited people from being present on "any street, road, alley, avenue, park, or other public place in the City of Fredericksburg." Individuals who violated the curfew were subject to criminal penalties.

74.    The curfew aimed to restrict and retaliate against Plaintiffs' constitutionally protected speech, which Defendants viewed as critical of the police and the government. Upon information and belief, the City of Fredericksburg has not enacted curfews for demonstrations held in support of law enforcement or that were not otherwise critical of the police or government. Further, upon information and belief, the City of Fredericksburg only sought to enforce the curfew against those who were protesting against police brutality. It did not enforce the curfew against people who were out in the City during the time of curfew, but who were not engaged in protest activities. The curfew had the purpose and effect of chilling and restricting Plaintiffs' speech activities, as Plaintiffs could not continue protesting while the curfew was in effect without the threat of arrest and criminal penalties.

## II.    Defendants' Violent Suppression of Plaintiffs' Peaceful Protests on June 1, 2020

### a.    Defendants' Unlawful Conduct Against Plaintiffs Banks, Foreman, Jackson, Lough, and Stebbins-Sharpless

75.    On June 1, 2020, protesters started marching peacefully in downtown Fredericksburg. They walked toward Stafford County via U.S. Route 1 and arrived at Falmouth Bridge, which sits 23 feet above the rocky riverbed of Rappahannock River. Falmouth Bridge connects the City of Fredericksburg with Stafford County.

76.    The protesters at the bridge included Plaintiffs Banks, Foreman, Jackson, Johns, Lough, and Stebbins-Sharpless.

77.    Like it had the day before, the City of Fredericksburg, through Defendants Baroody and Layton, decided to prevent Plaintiffs and other protesters from demonstrating. They

did so by again declaring Plaintiffs' protest activities to be unlawful, deploying Officers to use excessive force against Plaintiffs, and extending the curfew to restrict protest activities.

78.    Defendant Stafford County also decided that it did not want Plaintiffs and other protesters engaging in demonstrations against police brutality within its jurisdictional lines. On May 31, 2020, Stafford County had similarly used force and violence to prevent people from protesting against police brutality in the County. Upon information and belief, Defendant Stafford County's Sheriff, Defendant Decatur, made all decisions about County law enforcement's response to the protests, including use of force and chemical agents to disperse the protest. Stafford County and the City of Fredericksburg worked together to coordinate a collective law enforcement response to Plaintiffs' protest activities.

79.    Upon information and belief, Stafford County also failed to train and supervise law enforcement Officers on the proper use of force and appropriate use of chemical agents and weapons, despite authorizing and planning their use.

80.    When the protesters first arrived at Falmouth Bridge, two or three FPD police vehicles were parked near U.S. Route 1. While on the bridge, the protesters, including Plaintiffs, peacefully marched and chanted, and they sat down to hydrate and have snacks.

81.    Suddenly a large number of John Doe Officers in riot gear and armored vehicles arrived at Falmouth Bridge. John Doe Officers from the SCSO and other agencies lined up on the Stafford side of the bridge near King Street, and John Doe Officers with the FPD and other agencies lined up on the Fredericksburg side of the bridge, enclosing the protesters and Plaintiffs on the bridge. Because the Officers were acting under the express orders and directives from the City of Fredericksburg and Stafford County, they were coordinated in their actions.

82.     The protesters, including several Plaintiffs, chanted "Black Lives Matter," and many of them laid face down on the ground as a peaceful and symbolic gesture to express their grief and outrage. Plaintiffs Banks, Foreman, Jackson, Johns, Lough, and Stebbins-Sharpless were peaceful, unarmed, and not engaging in any activity that threatened the safety of any person or damaged any property—to the contrary, some of the Plaintiffs were lying on the ground. Nonetheless, without warning, the John Doe Officers from the Stafford side of the bridge began indiscriminately shooting a barrage of tear gas canisters and rubber bullets at the protesters and Plaintiffs, including directly at the faces and bodies of Plaintiffs on the ground. The Officers almost immediately deployed tear gas and rubber bullets upon encountering Plaintiffs and other protesters because the decision to use force had been made in advance, prior to the Officers' arrival on the scene.

83.     The John Doe Officers from the Stafford side of the bridge began marching toward the protesters and Plaintiffs, while beating their police shields. As the Officers advanced, they continued deploying tear gas canisters and chemical agents and shooting rubber bullets at the protesters, including Plaintiffs.

84.     Because of the John Doe Officers' attacks, the protesters and Plaintiffs started screaming and running. The protesters and Plaintiffs, who were blinded by the tear gas, risked accidentally falling off the bridge to the rocky riverbed as they tried to run away. The protesters and Plaintiffs violently coughed and choked, and some of them collapsed due to asthma attacks and panic attacks. The protesters yelled that they were trapped between the Officers approaching aggressively from the Stafford side of the bridge and the FPD and other Officers blocking the other end of the bridge.

85.     When the attacks began, Plaintiff Banks had been peaceful, unarmed, and not engaging in any activity that threatened the safety of any person or damaged any property. Nonetheless, John Doe Officers at the scene launched their attacks against her, in accordance with specific policy directives from Stafford County and the City of Fredericksburg. The John Doe Officers fired a rubber bullet at her which struck her in her chest, causing significant pain and injury. As the John Doe Officers shot tear gas canisters and chemical agents at her, she came in contact with and inhaled the chemical agents. She suffered their painful effects. Her eyes, face, neck, and midsection burned, and she feared for her physical safety.

86.     When the attacks began, Plaintiff Johns was lying on the ground near the front of the crowd to express her grief and outrage. She had been peaceful, unarmed, and not engaging in any activity that threatened the safety of any person or damaged any property. Nonetheless, John Doe Officers at the scene launched their attacks against her, in accordance with specific policy directives from Stafford County and the City of Fredericksburg. As the John Doe Officers shot tear gas canisters and chemical agents at her, she screamed and ran away, and came in contact with the chemical agents. She inhaled the chemicals and suffered an asthma attack. She could not breathe and thought she was going to die.

87.     When the attacks began, Plaintiff Foreman had been peaceful, unarmed, and not engaging in any activity that threatened the safety of any person or damaged any property. Nonetheless, John Doe Officers at the scene launched their attacks against her, in accordance with specific policy directives from Stafford County and the City of Fredericksburg. The John Doe Officers shot tear gas canisters and chemical agents at her. She came in contact with the chemicals and suffered their painful effects. A tear gas canister hit her on her leg so hard that it

left a mark and caused immense pain. Her eyes burned intensely, and she could not open them to see. She feared for her physical safety.

88.    When the attacks began, Plaintiff Jackson had been peaceful, unarmed, and not engaging in any activity that threatened the safety of any person or damaged any property. Nonetheless, John Doe Officers at the scene launched their attacks against her, in accordance with specific policy directives from Stafford County and the City of Fredericksburg. As the John Doe Officers shot tear gas canisters and chemical agents at her, she came in contact with the chemicals and suffered their painful effects. She felt fire in her eyes. To get away from the attacks, she had to run on the bridge with her eyes closed. She tripped over things because she could not see. She feared for her physical safety.

89.    When the attacks began, Plaintiff Lough had been peaceful, unarmed, and not engaging in any activity that threatened the safety of any person or damaged any property. Nonetheless, John Doe Officers at the scene launched their attacks against her, in accordance with specific policy directives from Stafford County and the City of Fredericksburg. As the John Doe Officers shot tear gas canisters and chemical agents at her, she came in contact with the chemicals and suffered their painful effects. She could not breathe, and she lost her vision for several minutes. She had to be escorted by other protesters to get away from the violence. She feared for her physical safety.

90.    When the attacks began, Plaintiff Stebbins-Sharpless was peaceful, unarmed, and not engaging in any activity that threatened the safety of any person or damaged any property. Nonetheless, John Doe Officers at the scene launched their attacks against him, in accordance with specific policy directives from Stafford County and the City of Fredericksburg. As the John Doe Officers shot tear gas canisters and chemical agents at him, he came in contact with the

chemicals and suffered their painful effects. He experienced difficulty breathing and intense burning in his eyes. He feared for his physical safety.

91.     At the direction of the City of Fredericksburg, through Baroody and Layton, and at the direction of Stafford County, through Decatur, the John Doe Officers coordinated the attacks against Plaintiffs and used excessive force, chemical weapons, and dangerous tactics, including trapping Plaintiffs on the bridge, in an effort to restrict and retaliate against Plaintiffs' peaceful speech, which Defendants viewed as critical of the police and the government. Defendants acted with malice, knowing that their actions would place Plaintiffs in grave physical danger, with disregard to Plaintiffs' constitutional rights and overall health and safety.

**b. Defendants Declare Second Curfew to Chill Plaintiffs' Speech**

92.     The City of Fredericksburg, through Defendant Baroody, issued another curfew initially between the hours of 8 p.m. and 6 a.m., beginning on June 1, 2020 and ending on June 3, 2020. Despite acknowledging that protests had been peaceful, the City of Fredericksburg extended the curfew until noon of June 6, 2020.

93.     The curfew prohibited people from being present on "any street, road, alley, avenue, park, or other public place in the City of Fredericksburg." Individuals who violated the curfew were subject to criminal penalties.

94.     The curfew aimed to restrict and retaliate against Plaintiffs' constitutionally protected speech, which Defendants viewed as critical of the police and the government. Defendants enacted the curfew specifically in response to protest activities and for the purpose of limiting protest activities. Upon information and belief, the City of Fredericksburg has not enacted curfews for demonstrations held in support of law enforcement, or that were not otherwise critical of the police or government. Further, upon information and belief, the City of

23

Fredericksburg only sought to enforce the curfew against those who were protesting against police brutality. It did not enforce the curfew against people who were out in the City during the time of curfew but were not engaged in protest activities.

95.    The curfew had the purpose and effect of curtailing and chilling Plaintiffs' peaceful protest activities. Plaintiff Brown was handcuffed and cited on June 1, 2020 for violating this unlawful curfew, and is currently in criminal proceedings.

### III.    Defendants' Conduct Following May 31 and June 1, 2020

96.    Following the events of May 31 and June 1, police conduct of the same nature continued in Fredericksburg, including excessive use of force, unlawful arrests, and intimidation of protesters who supported the Black Lives Matter movement.

97.    Defendants' unconstitutional conduct was in retaliation for Plaintiffs' protected speech activities, which Defendants viewed as critical of the police and the government. Defendants have not similarly responded with declarations of unlawful assemblies, force, and curfews, to other protests that Defendants did not view as oppositional to their position.

98.    For example, the very same month that Defendants used excessive force against Plaintiffs, other demonstrators convened in Fredericksburg, Virginia to attend a "Back the Blue" rally in support of law enforcement Officers and as a counter-protest to Black Lives Matter protests. Hundreds of people, some carrying firearms, marched in the streets of downtown Fredericksburg, holding signs and chanting phrases that expressed support for the police. Prior to the Back the Blue demonstration, some protesters who had participated in the May 31 and June 1 protests received threats of violence, with one prospective rally attendee declaring that it would be a "second Charlottesville"—in reference to the 2017 right-wing protest that turned violent and resulted in the murder of a peaceful protester.

24

99.     In stark contrast to the protests in which Plaintiffs participated, Defendants did not use force or attempt to restrict the pro-police protest. Defendants did not deploy tactical units and Officers in riot gear in preparation for any violence that had been suggested might occur in advance. To the contrary, high-level officials of Defendant City of Fredericksburg greeted demonstrators, and Defendants provided escort and support to the protesters. Back the Blue rally participants marched in the street while blocking traffic, but Defendants did not intervene and did not declare that the assembly was unlawful or enact a curfew.

## INJURY TO PLAINTIFFS

100.     As a result of Defendants' unlawful policies, customs, and conduct, Plaintiffs suffered constitutional injury, physical pain and injury, and emotional distress.

101.     Plaintiffs suffered the short- and long-term physical effects of the chemical weapons, excessive force, and violent tactics used by Defendants. Plaintiffs suffered emotional trauma and injury, which persist to present, including fear, anxiety, and emotional distress.

102.     Plaintiffs' peaceful protest activities were chilled and curtailed by Defendants.

## CLAIMS FOR RELIEF

**First Cause of Action (Against All Defendants): Fourth Amendment / 42 U.S.C. § 1983: Excessive Use of Force**

103.     Plaintiffs incorporate by reference the allegations in Paragraphs 1-102 above.

104.     Defendants City of Fredericksburg and County of Stafford are liable for violating Plaintiffs' clearly established Fourth Amendment right to be free from excessive force and unlawful seizure, as their official policies, directives, and customs deprived Plaintiffs of their Fourth Amendment rights. The Municipal Defendants ordered, directed, authorized, and affirmatively caused the use of excessive force as alleged herein, through their policies and

customs, and through decisions by individuals with policymaking authority who bind the Municipal Defendants, including Defendants Baroody, Layton, and Decatur.

105.    Defendants Baroody, Layton, and Decatur are personally liable for violating Plaintiffs' clearly established Fourth Amendment right to be free from excessive force and unlawful seizure because, acting under color of state law, they ordered, directed, authorized, and affirmatively caused the use of excessive force as alleged herein.

106.    Defendants Hill and John Doe Officers 1-50 are personally liable for violating Plaintiffs' clearly established Fourth Amendment right to be free from excessive force and unlawful seizure because, acting under color of state law, they carried out the Municipal Defendants' policies and directives by using dangerous weapons and tactics against Plaintiffs; supervising, instructing, and dispatching other Officers to use excessive force against Plaintiffs; and otherwise affirmatively causing Plaintiffs' constitutional injury.

107.    Defendants' use of force, including but not limited to using pepper spray, tear gas, and other physical force as alleged herein, was excessive and objectively unreasonable in light of the facts and circumstances confronting them, as Plaintiffs were protesting peacefully, not committing any crime warranting violent police intervention, not posing any threat to the safety of the Officers or others, and trying to comply with the Officers' orders. Defendants acted intentionally and maliciously, and with willful, callous, wanton, and reckless disregard for the rights of Plaintiffs.

**Second Cause of Action (Against All Defendants): First Amendment / 42 U.S.C. § 1983: Retaliation for Protected Speech by Excessive Force**

108.    Plaintiffs incorporate by reference the allegations in Paragraphs 1-102 above.

109.    Defendants City of Fredericksburg and County of Stafford are liable for violating Plaintiffs' clearly established First Amendment right to freedom of speech and assembly, as their

official policies, directives, and customs deprived Plaintiffs of their First Amendment rights. In an effort to restrict and retaliate against Plaintiffs' protected speech, which Defendants viewed as critical of the police and the government, the Municipal Defendants ordered, directed, authorized, and affirmatively caused the use of excessive force alleged herein, through their policies and customs, and through decisions by individuals with policymaking authority who bind the Municipal Defendants, including Defendants Baroody, Layton, and Decatur. The Municipal Defendants' actions adversely affected Plaintiffs' constitutionally protected speech.

110.    Defendants Baroody, Layton, and Decatur are personally liable for violating Plaintiffs' clearly established First Amendment right to freedom of speech and assembly because, acting under color of state law, they ordered, directed, authorized, and affirmatively caused the excessive use of force alleged herein, in an effort to restrict and retaliate against Plaintiffs' protected speech, which Defendants viewed as critical of the police and the government. Defendants' actions adversely affected Plaintiffs' constitutionally protected speech. Defendants acted intentionally and maliciously, and with willful, callous, wanton, and reckless disregard for the rights of Plaintiffs.

111.    Defendants Hill and John Doe Officers 1-50 are personally liable for violating Plaintiffs' clearly established First Amendment right to freedom of speech and assembly because, acting under color of law, they carried out the Municipal Defendants' policies and directives in an effort to restrict and retaliate against Plaintiffs' speech, which Defendants viewed as critical of the police and the government, including by using excessive force, and supervising, instructing, or dispatching Officers to use excessive force. Defendants' actions adversely affected Plaintiffs' constitutionally protected speech. Defendants acted intentionally and maliciously, and with willful, callous, wanton, and reckless disregard for the rights of Plaintiffs.

**Third Cause of Action (Against Defendants City of Fredericksburg and Timothy J. Baroody): First Amendment / 42 U.S.C. § 1983: Retaliation for Protected Speech by Unlawful Curfew**

112.    Plaintiffs incorporate by reference the allegations in Paragraphs 1-102 above.

113.    Defendant City of Fredericksburg is liable for violating Plaintiffs' clearly established First Amendment right to freedom of speech and assembly, as it declared and announced that Plaintiffs' protests were unlawful assemblies, and then enacted a curfew that deprived Plaintiffs of their First Amendment rights. The curfew was a written policy and a decision by Defendant Baroody who had final policymaking authority. The assemblies were declared unlawful and the curfew was enacted to restrict and retaliate against Plaintiffs' protected speech that Defendant viewed as critical of the police and the government, and adversely affected Plaintiffs' constitutionally protected speech.

114.    Defendant Baroody is personally liable for violating Plaintiffs' clearly established First Amendment right to freedom of speech and assembly because, acting under color of state law, he declared Plaintiffs' protest activities to be "unlawful" and set a curfew that prevented Plaintiffs from further protesting as alleged herein. His actions had the purpose of restricting and retaliating against Plaintiffs' protected speech that he viewed as critical of the police and the government, and adversely affected Plaintiffs' constitutionally protected speech. Defendant Baroody acted intentionally and maliciously, and with willful, callous, wanton, and reckless disregard for the rights of Plaintiffs.

**PRAYER FOR RELIEF**

Plaintiffs request that this Court:

115.    Rule that Defendants' actions violated Plaintiffs' rights under the First and Fourth Amendments to the United States Constitution;

116.    Enter judgment awarding Plaintiffs compensatory damages against all Defendants in an amount appropriate to the evidence adduced at trial;

117.    Enter judgment awarding Plaintiffs punitive damages against all Defendants sued in their individual capacities in an amount appropriate to the evidence adduced at trial;

118.    Enter judgment awarding Plaintiffs their costs and reasonable attorneys' fees in this action as provided in 42 U.S.C. § 1988(b); and

119.    Grant Plaintiffs such further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues triable as of right.

Dated: February 4, 2021

Respectfully submitted,

/s/ Michael Allen

Michael Allen [Virginia Bar Number: 25141]
Jia Cobb*
Soohyun Choi*
RELMAN COLFAX, PLLC
1225 19th St. NW
Suite 600
Washington, D.C. 20036
Tel: 202-728-1888
Fax: 202-728-0848
mallen@relmanlaw.com
jcobb@relmanlaw.com
schoi@relmanlaw.com

Tara Murray*
LAW OFFICE OF TARA MURRAY, PLLC
300 New Jersey Ave. NW
Suite 900

Washington, D.C. 20001
Tel: 202-469-3400
taralcmurray@gmail.com

*Attorneys for Plaintiffs*

\*_Pro hac vice_ applications to be filed